**Law Offices of Avrum J. Rosen, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen, Esq.
Alex E. Tsionis, Esq.

*Proposed Attorneys for Debtor*
*and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                                        Chapter 11

COLONIAL GATE GARDENS LLC,                              Case No.: 21-22265-shl

                              Debtor.
-----------------------------------------------------------X

**DEBTOR'S APPLICATION FOR INTERIM ORDER
PURSUANT TO 11 U.S.C. §§ 105, 361 AND 363 AND FED. R. BANKR. P. 4001
AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL AND
GRANTING ADEQUATE PROTECTION TO THE LENDER AND
SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B)**

TO:   THE HONORABLE SEAN H. LANE,
        UNITED STATES BANKRUPTCY JUDGE:

Colonial Gate Gardens LLC, the debtor and the debtor in possession (the "Debtor"), by and through its proposed attorneys, the Law Offices of Avrum J. Rosen, PLLC, respectfully submits this as and for its application (the "Application") seeking the entry of an interim order (the "Interim Order"), pursuant to sections 105, 361 and 363 of Title 11 of the United States Code, (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Bankruptcy Rules of this Court (the "Local Rules"): (i) authorizing the Debtor to use the cash collateral (the "Cash Collateral") of Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of Corevest

American Finance 2017-1 Trust Mortgage Pass-Through Certificates ("Wilmington"), a pre-petition secured lender; (ii) scheduling a final hearing (the "Final Hearing") to consider the entry of a final order (the "Final Order") authorizing the Debtor's use of the Cash Collateral.  In support of this Application, the Debtor relies on the affidavit of Yitzchok Loeffler ("Yitzchok"), the Managing Director of the Debtor.  In further support of this Application, the Debtor respectfully states as follows:

1. Pursuant to Rule 4001 of the Bankruptcy Rules and Rule 4001-2 of the Local Rules, the following are the material provisions regarding the proposed use of cash collateral (as defined in section 363(a) of the Bankruptcy Code):

> **Parties with Interest in Cash Collateral** (Bankr. R. 4001(b)(1)(B)(i):  Wilmington holds a security interest in the rents, issues and profits from the multiple real properties identified on the schedule of real property annexed hereto as **Schedule "A"** (the "Properties"). The Debtor's only source of income is the collection of rents received from the Properties.

> **Use of Cash Collateral** (Bankr. R. 4001(b)(1)(B)(ii): The Debtor is authorized to use the Cash Collateral in accordance with, and subject to, the budget (the "Budget") in order to satisfy the post-petition costs and expenses of the continued operations of its business. The initial budget (the "Initial Budget"), commencing June 1, 2021 and covering a three (3) month period, is annexed to this Application and the proposed Interim Order as **Exhibit "A"**.

> **Adequate Protection for Wilmington** (Bankr. R. 4001(b)(1)(B)(iv): As adequate protection for any diminution in the value of Wilmington's interest in its collateral resulting from (a) the Debtor's use of Cash Collateral; (b) use, sale or lease of Wilmington's collateral; or (c) the imposition of the automatic stay under Section 362(a) of the Bankruptcy Code (the aggregate amount of such diminution is referred to hereinafter as the "Adequate Protection Lien"), Wilmington shall receive the following adequate protection: (i) replacement liens pursuant to section 361(2) of the Bankruptcy Code (the "Replacement Liens") on all property of the Debtor and its estate, whether now owned or hereafter acquired (collectively, the "Post-petition Collateral"); (ii) to the extent required by the pre-petition loan documents (the "Loan Documents") to the same extent

and validity as its pre-petition liens;[1] and (iii) adequate protection equal to the pre-petition monthly interest-only mortgage payments at the non-default contract rate made to Wilmington in accordance with the pre-petition loan documents.

**Carve Out**: The Adequate Protection Liens shall be subject to the following (collectively, the "Carve Out"): (i) payments of those fees due to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930; (ii) the payment of allowed professional fees and disbursements incurred by the Debtor's professionals retained by an Order of the Bankruptcy Court, and any statutory committee (the "Committee") appointed in this case pursuant to fee orders or any Monthly Compensation Order, and in the event of a default that results in the termination of the Debtor's authorization to use cash collateral, unpaid Professional Fees and Disbursements incurred prior to delivery of a carve out trigger notice (the "Carve Out Trigger Notice") in accordance with the Budget not to exceed the sum of $50,000.00; (iii) any recoveries in favor of the estate pursuant to Chapter 5 of the Bankruptcy Code; and (iv) any amounts allowed by the Court as fees and expenses of a trustee appointed under section 726(b) of the Bankruptcy Code in an amount not to exceed $7,500.00.

**Material Terms, Including Duration, of the Use of Cash Collateral** (Bankr. R. 4001(b)(1)(B)(iii): The Debtor's authorization to use Cash Collateral shall commence as of the entry of the Interim Order and terminate upon the earliest of (i) the date that is sixty (60) days after the Petition Date; (ii) entry of a Final Order or a further interim order authorizing the Debtor's use of Cash Collateral; or (iii) the occurrence of a Termination Event (the "Termination Date").

Occurrence of the Termination Date shall terminate the rights of the Debtor to use Cash Collateral hereunder, but shall not in any manner affect the rights of any secured party, or in any manner the validity, priority, enforceability or perfected status of any Replacement Liens.

Termination Event: The occurrence of any of the following events, shall constitute a Termination Event: (i) this Chapter 11 case shall have been dismissed or converted to a case under Chapter 7 of the Bankruptcy Code, or there shall have been appointed in the Chapter 11 case, a trustee or examiner with expanded powers beyond the authority to investigate particular activities of the Debtor; (ii) the Interim Order is modified, vacated, stayed, reversed, or is for any reason not binding on the Debtor;

---

[1] It is the Debtor's position that Wilmington is over secured by several million dollars as the amount the Debtor allegedly owes Wilmington approximately 4.9 million and the market value of the real property is approximately 7.5 million. The Debtor disputes what Wilmington is actually owed.

(iii) the failure of the Debtor to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under the Interim Order; (iv) a default by the Debtor in reporting financial information as and when required under the Interim Order, continued uncured for a fifteen (15) day period; or (iv) a variance, resulting from the Debtor's expenditures as set forth in the Budget that exceeds ten (10) percent, unless caused by an increase in the Debtor's business.

Remedies: Any secured party shall provide the Debtor, counsel for any Committee (and if no Committee is appointed, the 20 largest creditors of the Debtor), other secured parties and the Office of the United States Trustee, with written notice of the occurrence of a Termination Event (the "Remedies Notice"). Upon the expiration of ten (10) business days after the Debtor, counsel for the Committee (and if no Committee is appointed, the 20 largest creditors of the Debtor) and the U.S. Trustee's receipt of the Remedies Notice, and the Debtor has failed to cure the alleged Termination Event, the secured party may move the Court on seven (7) days' notice for an Order lifting the automatic stay provisions of section 362 of the Bankruptcy Code to the extent necessary to permit that secured party to exercise its rights and remedies against the Debtor and its collateral, including, but not limited to, its right to setoff against any existing Cash Collateral. The Debtor's right to use the Cash Collateral shall terminate upon the expiration of the ten-day cure period.

Determination of Validity, Enforceability and Amount of the Security Interests: The Interim Order does not contain an acknowledgment by the Debtor as to the validity, enforceability and amount of such obligation and security interest. The Debtor expressly reserves its rights in that regard as the Debtor asserts that the alleged Notice of Default was jurisdictionally defective and the Note was never in default or accelerated and filing of the foreclosure action was improper and severely damaged the Debtor.

## JURISDICTION

2.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding as that term is defined within 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3. On May 6, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code.

4. The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in this case.

5. The Debtor is a limited liability company, formed and existing under the laws of the State of New York, with its principal office located at 45 Washington Ave, Spring Valley, New York 10977. The Debtor is engaged in the real estate investment business by purchasing single-family homes and or condominium units, renovating them and then leasing them to tenants in exchange for rent.

6. On or about October 21, 2019, Wilmington, through its attorneys, Buchanan Ingersoll and Rooney PC (the "Bank's Attorney"), allegedly sent a letter to the Debtor notifying the Debtor, Esther Loeffler (the Debtor's member, "Esther") and Yitzchok of the Debtor's alleged default under the note and Wilmington's intention to accelerate the loan (the "Notice of Default"). Neither Esther nor Yitzchok knew who the Bank's Attorney was as they never dealt with them before and Wilmington never gave them written or verbal notice that the Bank's Attorney is actually its attorney. Esther and Yitzchok have no recollection of ever receiving the Notice of Default from the Bank's Attorney in the first place.

7. In the months following the alleged Notice of Default, the Debtor became current with its mortgage payments to the Bank. In fact, Yitzchok had numerous telephone conversations with Wilmington's representatives who confirmed to Yitzchok that the Debtor had indeed become current on its mortgage payments.

8. In or around January of 2020, the Debtor again experienced cash flow problems and again fell behind on its mortgage payments to Wilmington.

9. Without receiving a "new" notice of default from Wilmington[1], on or about February 11, 2020, Wilmington commenced an action captioned as *Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of the Corevest American Finance 2017-1 Trust Mortgage Pass-Through Certificates v. Colonial Gate Gardens LLC, Esther Loeffler, Yitzchok Loeffer et al.*, Index No. EF001138-2020, pending in the State of New York Supreme Court, County of Orange, seeking to, among other things, foreclose on the Debtor's Properties (the "Foreclosure Action").

10. To Yitzchok's dismay, the Foreclosure Action was based upon the Debtor's alleged default from the October 2019 Notice of Default and not on the Debtor falling behind on its payments in or around January 2020. To make matters worse, Wilmington was charging the Debtor default rate interest from the date of the Notice of Default and not from January 2020. The Debtor, however, has an email from Wilmington's representative stating that the Debtor's mortgage payments are current. A copy of that email is annexed hereto as **Exhibit "B"**.

11. Wilmington then served the summons and complaint in the Foreclosure Action on all of the Debtor's tenants giving the tenants the false impression that they should not pay their rent because the Debtor was in foreclosure. In fact, the Bank's Attorney notified several of the tenants to not pay their rent to the Debtor's management agent. The issue of rent collection was further exacerbated by the advent of the coronavirus pandemic, because of which many of the Debtor's tenants did not pay their rent during this time.

---

[1] The Debtor is not acknowledging that it received the Notice of Default that was allegedly sent in or around October 2019.

12. Ultimately, the Debtor's Chapter 11 filing was precipitated by the wrongly commenced Foreclosure Action, which sought default rate interest from the date of the Notice of Default in October 2019.

13. The Debtor's primary assets consist of (26) single-family houses and or condominium units throughout Orange, Rockland and Ulster Counties in New York. A schedule identifying the Properties is annexed hereto as **Schedule "A"**. The Properties are encumbered by a blanket first mortgage held by Wilmington in the original principal amount of $4,271,000.00. A copy of the alleged Loan Documents are annexed hereto as **Exhibit "C"**.

14. As of the Petition Date, the Debtor was allegedly indebted to Wilmington in the total amount of approximately $4,900,000.00[2] consisting of unpaid principal and alleged unpaid interest. The Debtor believes that the aggregate market value of the Properties is presently approximately $7,515,000.00. The Debtor's only source of income are the rents from the Properties and this constitutes the Cash Collateral held by Wilmington.

## RELIEF REQUESTED

15. By this Application, the Debtor requests entry of an interim order, substantially in the form annexed hereto, authorizing:

>   (i) the Debtor to use the Cash Collateral in accordance with the Budget, in which Wilmington has an interest;
>
>   (ii) the granting of adequate protection to Wilmington with respect to the use of the Cash Collateral; and
>
>   (iii) the scheduling of a Final Hearing to be held no earlier than fourteen (14) days after the entry of the Interim Order to consider the entry of the Final Order.

---

[2] This amount includes default rate interest, which the Debtor disputes. The Debtor does not acknowledge that it owes this amount to Wilmington and reserves its right to challenge any and all amounts owed to Wilmington.

16.    The Debtor submits that absent authorization to use Cash Collateral to allow this Debtor to continue its post-petition operation, the Debtor, its estate, and its creditors shall suffer immediate and irreparable harm.

## BASIS FOR RELIEF

17.    Section 363 of the Bankruptcy Code governs the Debtor's use of property of the estate.[3] Section 363(c)(1) of the Bankruptcy Code provides that: If the business of the debtor is authorized to be operated under section 1108 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing. 11 U.S.C. § 363(c)(1).

18.    Section 363(c)(2) of the Bankruptcy Code, however, provides an exception with respect to "cash collateral" to the general grant of authority to use property of the estate in the ordinary course as set forth in section 363 of the Bankruptcy Code. Specifically, a trustee or debtor in possession may not use, sell, or lease "cash collateral" under subsection (c)(1) unless:

    (A)    each entity that has an interest in such collateral consents; or
    (B)    the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

19.    Accordingly, pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral without the consent of the secured party or approval from the Court, except that in a Single Asset Real Estate Case pursuant to 11 U.S.C §362(d)(3)(B)(i) the Debtor may use cash collateral to pay adequate protection to the Secured Party from that collateral and to maintain

---

[3] Pursuant to section 1107 of the Bankruptcy Code, a debtor-in-possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with section 363 of the Bankruptcy Code. See 11 U.S.C. § 1107(a).

the Property. The Debtor submits that, under the circumstances here, including the Debtor's need to use Cash Collateral and the adequate protection afforded to Wilmington, its request to use Cash Collateral should be granted.

## DEBTOR'S NEED TO USE CASH COLLATERAL

20. The Debtor has significant and immediate cash needs to continue paying its ongoing obligations as a debtor-in-possession and propose a plan of reorganization and emerge from bankruptcy. Reorganization under Chapter 11 is critical to preserving the Debtor's value as a going concern. As shown in the Budget, the Debtor anticipates that the expenses of the Debtor for the next ninety (90) days shall total approximately $85,825.22, exclusive of payments to Wilmington. The Debtor expects receipts to total approximately $414,000.00. In addition, the Debtor has collected, through a management company, and still has on hand, approximately $130,000.00 to be used towards the operation of the Properties.

21. The Debtor's immediate need for the use of cash collateral is based upon the Debtor's need to meet its real estate tax obligations, insurance obligations, utility obligations[4], maintenance expenses, management expenses[5] and other operating expenses. By meeting these post-petition, administrative expenses, the Debtor shall protect the assets of its creditors and preserve the value of its business as a going concern.

## PROPOSED ADEQUATE PROTECTION

22. To the extent that Wilmington's interest in the Cash Collateral constitutes a valid and perfected security interest and lien as of the Petition Date, it is entitled, pursuant to sections

---

[4] The budget provides for a security deposit of $500.00 in the first week of June pursuant to 11 U.S.C. § 366. The appropriate motion under that section will be filed shortly.
[5] The budget provides for payments to Bushville North Group LLC ("Bushville"), the debtor's proposed real estate management company. The appropriate motion to retain Bushville will be filed shortly and the Debtor will not make any payments to Bushville without an appropriate order from this Court.

361 and 363(e) of the Bankruptcy Code, to adequate protection of its interests in the Cash Collateral. Section 363(e) of the Bankruptcy Code provides that on request of an entity that has an interest in property used or proposed to be used by the debtor, the Court shall prohibit or condition such use as is necessary to provide "adequate protection" of that interest.

23. What constitutes "adequate protection" is a "fact-specific inquiry". *See, In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996). The purpose of adequate protection is to prevent the diminution in the value of the secured creditor's interest in their collateral during the reorganization process. *See, In re WorldCom. Inc.*, 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004) ("The legislative history for section 361 of the Bankruptcy Code, which sets forth adequate protection may be provided under section 363, makes clear that the purpose is to insure that the secured creditor receives value for which the creditor bargained for prior to the debtor's bankruptcy."): *In re Gallegos Research Group Corp.*, 193 B.R. 577, 584 (Bankr. D. Colo. 1995) (*citing United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc. Ltd.,* 484 U.S. 365 (1988)) ("[T]o determine whether an entity is entitled to adequate protection and the type and amount of adequate protection required, a court must determine the value of the collateral; the creditor's interest in the collateral and the extent to which that value will decrease during the course of the bankruptcy case"); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (focus is on protection of the secured creditor from diminution in value of its collateral during reorganization process). However, "[a]dequate protection, not absolute protection, is the statutory standard." *In re Beker Indus.*, 58 B.R. at 736.

24. The Debtor proposes, subject to this Court's approval, to provide Wilmington with the following adequate protection:

      i. Replacement Liens on the Post-petition Collateral to the same extent and validity as its pre-petition liens; provided, however, that the Post-petition Collateral shall not include any recoveries under Chapter 5 of the Bankruptcy Code and are further subject to the Carve Out described on page 2 herein;

      ii. Adequate protection payments to Wilmington in monthly payments that are equal to the monthly payments required by the Debtor under the loan agreement which requires interest-only payments at the non-default contract rate, which is the same standard required pursuant to 11 U.S.C. § 363(d)(4). However, Wilmington is an over secured creditor and is also adequately protected by the equity cushion in the Properties;

      iii. **Carve Out**: The Adequate Protection Liens shall be subject to the following Carve Out: (i) payments of those fees due to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930; (ii) the payment of allowed professional fees and disbursements incurred by the Debtor's professionals retained by an Order of the Bankruptcy Court, and any statutory committee appointed in this case pursuant to fee orders or any Monthly Compensation Order, and in the event of a default that results in the termination of the Debtor's authorization to use cash collateral, unpaid Professional Fees and Disbursements incurred prior to delivery of a carve out trigger notice in accordance with the Budget not to exceed the sum of $50,000.00; (iii) any recoveries in favor of the estate pursuant to chapter 5 of the Bankruptcy Code; and (iv) any amounts allowed by the Court as fees and expenses of a trustee appointed under section 726(b) of the Bankruptcy Code in an amount not to exceed $7,500.00.

    25. The Debtor shall undertake to keep the Collateral fully insured against all loss, peril and hazard and make Wilmington the additional insured in any such insurance policy maintained by the Debtor as to the Collateral. The Debtor shall timely pay any and all undisputed post-petition taxes, assessments and governmental charges with respect to the Collateral as provided for under the Loan Documents. The Debtor has provided Wilmington with proof of insurance, and will give proof of any reasonable requested changes within five (5) business days of written demand and will give Wilmington reasonable access to its records in this regard.

26. The Debtor shall provide Wilmington, upon ten (10) business day's written notice, at any time during the Debtor's normal business hours, the right to inspect, audit, examine, check, make copies of or extract from the books and records of the Debtor, and monitor the Collateral, and the Debtor shall make all of the same reasonably available to Wilmington and its representatives, for such purposes.

27. The Debtor shall provide Wilmington with the right to inspect the location and the Debtor's books and records upon reasonable request and shall further provide Wilmington with all of the Debtor's operating reports on a timely basis.

## **THE BUDGET**

28. The Debtor has prepared and provided an initial three-month Budget (which is annexed to the Interim Order). The initial Budget has been thoroughly reviewed by the Debtor and its management and sets forth the periods covered thereby, among other things, the Debtor's projected monthly disbursements for each month commencing with the month starting on the Petition Date.

## **NOTICE**

29. Notice of the Application shall be given to: (i) the Office of the United States Trustee; (ii) the Debtor's 20 largest unsecured creditors; (iii) Wilmington; and (iv) any party having filed a notice of appearance in the case.

[*Remainder of Page Intentionally Left Blank*]

## **NO PRIOR REQUEST**

30.     The Debtor has not previously sought the relief sought herein before this Motion.

**WHEREFORE**, the Debtor respectfully requests that this Court enter (i) the proposed Interim Order; (ii) an Order scheduling the Final Hearing; and (iii) such other, further and different relief that this Court deems just, proper and equitable under the facts and circumstances herein.

Dated: May 7, 2021　　　　　　　　　　　　Respectfully submitted,
　　　　　Huntington, New York

　　　　　　　　　　　　　　　　　　　　　　**Law Offices of Avrum J. Rosen, PLLC**
　　　　　　　　　　　　　　　　　　　　　　*Proposed Attorneys for Debtor*
　　　　　　　　　　　　　　　　　　　　　　*and Debtor in Possession*

　　　　　　　　　　　　　By:　　*/s/ Avrum J. Rosen*
　　　　　　　　　　　　　　　　　Avrum J. Rosen, Esq.
　　　　　　　　　　　　　　　　　Alex E. Tsionis, Esq.
　　　　　　　　　　　　　　　　　38 New Street
　　　　　　　　　　　　　　　　　Huntington, NY 11743
　　　　　　　　　　　　　　　　　(631) 423-8527
　　　　　　　　　　　　　　　　　arosen@ajrlawny.com
　　　　　　　　　　　　　　　　　atsionis@ajrlawny.com